**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

FILED
IN CLERKS OFFICE
2026 OCT -5 A 11: 14
U.S. DISTRICT COURT
DISTRICT OF MASS.

**CAMERON LACROIX,**
Plaintiff,

v.

**WOODLAND PARK PARTNERS, LLC, and**
**THE HAMILTON COMPANY, INC.,**
Defendants.

Civil Action No. ________

**JURY TRIAL DEMANDED**

Plaintiff Cameron Lacroix ("Plaintiff"), proceeding pro se, brings this civil action against Woodland Park Partners, LLC ("Woodland Park") and The Hamilton Company, Inc. ("Hamilton"), and alleges as follows:

## I. INTRODUCTION

1. This action arises from Plaintiff's residential tenancy at 270 Grove Street, Apartment 6, Auburndale, Massachusetts, and from Defendants' alleged acts and omissions after Plaintiff repeatedly reported safety, security, fire-safety, and tenancy-related concerns.

2. Plaintiff leased Apartment 6 from Woodland Park for a fixed term from November 1, 2025 through October 31, 2026, and Hamilton acted as Woodland Park's managing agent.

3. Beginning in or around November 2025, Plaintiff experienced circumstances associated with his tenancy that caused substantial psychological distress and later sought crisis-stabilization services.

4. Plaintiff repeatedly sought assistance from management, including a transfer or other change in his housing arrangement, and reported certain concerns to governmental authorities.

5. Plaintiff alleges that Defendants failed to take adequate action in response and later commenced eviction proceedings. Plaintiff seeks relief under Massachusetts law and, only if supported by the required facts, applicable federal law.

## II. PARTIES

6. Plaintiff Cameron Lacroix leased and occupied 270 Grove Street, Apartment 6, Auburndale, Massachusetts during the events alleged herein.

7. Defendant Woodland Park Partners, LLC is identified in the written lease as Plaintiff's landlord and conducts business in Massachusetts.

8. Defendant The Hamilton Company, Inc. is identified in the lease as the managing agent authorized to act on Woodland Park's behalf and communicated with Plaintiff concerning the tenancy.

9. Plaintiff alleges that each Defendant is responsible for its own conduct and, where supported by the evidence, the conduct of its authorized agents acting within the scope of their authority.

## III. JURISDICTION AND VENUE

10. Plaintiff brings this action in the United States District Court for the District of Massachusetts.

11. Federal-question jurisdiction under 28 U.S.C. § 1331 exists only if the facts support a cause of action under the Fair Housing Act or another applicable federal statute.

12. If a viable federal claim is established, the Court may exercise supplemental jurisdiction under 28 U.S.C. § 1367 over related Massachusetts claims arising from the same case or controversy.

13. Alternatively, diversity jurisdiction under 28 U.S.C. § 1332 may be invoked only if complete diversity of citizenship and the statutory amount in controversy are established.

14. Venue is proper in this District because the property and substantial events giving rise to the claims are located in Massachusetts.

## IV. FACTUAL ALLEGATIONS

### A. The Tenancy

15. On or about October 17, 2025, Plaintiff entered into a written lease with Woodland Park for 270 Grove Street, Apartment 6, for a term beginning November 1, 2025 and ending October 31, 2026, at a monthly rent of $2,225.

16. The lease required the premises to be maintained as required by applicable law and included Plaintiff's right to quiet enjoyment.

17. The lease identified Hamilton as Woodland Park's managing agent.

18. Plaintiff occupied the apartment pursuant to that lease during the events alleged below.

### B. Beginning of Events and Documented Psychological Injury

19. Beginning in or around November 2025, Plaintiff experienced events and circumstances associated with his tenancy that caused substantial psychological distress and trauma.

20. On December 7, 2025, Plaintiff was evaluated at a crisis stabilization center in New Bedford, Massachusetts. The contemporaneous clinical record identifies "Unspecified trauma- and stressor-related disorder," ICD-10 code F43.9.

21. The December 7, 2025 record predates the later landlord-tenant litigation and documents a trauma- and stressor-related diagnosis during the early period of Plaintiff's tenancy.

22. Plaintiff resided at the crisis stabilization facility in early December 2025 while receiving services.

23. Plaintiff later filed an action styled Lacroix v. Central Intelligence Agency arising from alleged harassment he experienced while at that facility by persons he believed to be intelligence operatives known as Candace, Phillip, Regina, and others. Plaintiff alleges that action only as part of the chronology and does not rely on his belief concerning those persons' affiliations, standing alone, as proof of identity or governmental status.

**C. Plaintiff's Reports to Management**

24. In January 2026, Plaintiff met with Hamilton manager Mr. Arena and directly identified Kim McDougall, a third-floor neighbor, as one of the individuals about whom Plaintiff had reported security concerns.

25. Plaintiff had left a recording device in his kitchen and later reviewed a recording that he believes captured Mr. McDougall and an unidentified individual attempting to manipulate, or "jimmy," a window in an effort to gain entry. Plaintiff did not visually observe the persons at the window and alleges Mr. McDougall's identity based on his interpretation of the recording.

26. On one occasion, Plaintiff directly asked Mr. McDougall if he worked for the Drug Enforcement Administration or the Federal Bureau of Investigation. Mr. McDougall responded that he worked with neither agency.

27. Plaintiff later heard statements by Barton Miller that led Plaintiff to believe that Mr. McDougall and/or other individuals about whom Plaintiff had complained were likely associated with the Department of Homeland Security. Plaintiff also alleges that these are deep state operators affiliated with the Central Intelligence Agency due to Mr Miller's comments about December which link back to events which occurred at Amazon and a crisis center.

28. During February and March 2026, Plaintiff repeatedly informed Hamilton of safety and security concerns involving the property and other residents and requested a transfer, penalty-free departure, or other change in his housing arrangement.

29. In a February 23, 2026 communication, Plaintiff identified concerns involving specific tenants and requested a transfer.

30. Plaintiff also reported that on multiple occasions he found the rear door to his apartment open or unlocked and that items inside, including his personal laptop, were moved. He changed a lock in response and entry code.

31. Plaintiff reported those circumstances to the Newton Police Department and informed management that he had done so.

32. On March 1, 2026, Plaintiff again requested either a penalty-free departure or a transfer and stated that he had previously visited Hamilton's office concerning the same concerns.

33. On March 10, 2026, Plaintiff sent another written communication concerning safety and security.

34. Some communications included Plaintiff's beliefs concerning the identities or affiliations of other residents. Plaintiff does not rely on those beliefs alone as proof of the residents' identities or governmental affiliations.

35. Plaintiff relies on these communications principally as evidence that Defendants received repeated notice that he was reporting serious safety and security concerns associated with his tenancy.

**D. Fire-Safety Complaint**

36. On March 8, 2026, Plaintiff contacted the Massachusetts Department of Fire Services concerning what he believed to be obstructed rear exits serving units on the third floor of the property.

37. On March 9, 2026, the Department of Fire Services informed Plaintiff that the concern had been forwarded to the Newton Inspectional Services Department for follow-up.

38. Plaintiff alleges that the reported fire-safety issue was never resolved to his knowledge.

**E. Statements at the Property - April and May 2026**

39. On April 25, 2026, Mr. Miller who resides in Apartment 2 stated, "They had a problem back in December." Plaintiff alleges that the statement referred to the same general period as his early-December 2025 stay at the crisis facility, but does not allege that the statement alone establishes a connection between that resident and persons identified in Plaintiff's separate action. Plaintiff has another pending suit in this Court, Lacroix v. Amazon.com Services LLC, in

which he caught an insider threat at his place of employment in December of 2025. Plaintiff's escalation of the alleged threat led him to being suspended and placed under investigation. The civil suit is pending litigation and Plaintiff eventually returned to work, received an apology, and an assurance that the company had not been fully aware as to what had actually happened.

40. On May 3, 2026, while Plaintiff was present at the property, Mr. Miller stated, "I'm feeling liquored up" and, on the same date, "I'm gonna cut the [expletive] off." Plaintiff alleges the statements as words he believes Mr. Miller to have stated while sitting outdoors in a common area of the building.

41. On May 25, 2026, while Plaintiff was present, Mr. Miller stated, "keep doing what you're doing, you're scaring a lot of people." Plaintiff was not doing anything wrong aside from reporting alleged wrongdoing to the authorities which included the FBI's Office of the Inspector General.

**F. June 2026 Transfer Request**

42. On June 4, 2026, Plaintiff again contacted Hamilton regarding a transfer and stated that he had sent prior emails and visited the office concerning safety issues involving neighbors.

43. Plaintiff requested transfer to a similar unit, including a studio he had viewed, and explained that a transfer would permit him to get away from individuals about whom he had expressed safety concerns.

44. Plaintiff disclosed that rent was unpaid, stated that he had potential RAFT funds of up to approximately $7,000 available, and expressed an intention to address the balance once a plan was in place.

45. Plaintiff stated that the circumstances underlying his safety complaints were directly related to the accumulated balance.

46. Plaintiff alleges that his separate civil suits have only been cited to demonstrate the broader chronology and not as definitive proof of Defendants' liability in this case.

**G. June-August 2026 Events**

47. On June 19, 2026, Plaintiff observed Barton Miller and Lilla Klesh in the parking lot in front of the building. Plaintiff observed Mr. Miller holding a bottle and making what Plaintiff perceived to be unwelcome advances toward Ms. Klesh.

48. During that encounter, Plaintiff observed Mr. Miller form his hand into a trigger-like gesture resembling a handgun and point the gesture toward Ms. Klesh's head. On September 4, 2026 Plaintiff also observed Ms. Klesh back away from Mr. Miller after he stepped towards her and leaned in. Plaintiff alleges only his observations and does not allege Ms. Klesh's subjective state of mind as an established fact.

49. On August 1, 2026 Plaintiff was arrested by Department of Homeland Security agents based on frivolous information. The report used to take Plaintiff into custody listed the one fact requiring his arrest was due to a statement relating that he was going to “take down the deep state” . On August 15, 2026, while Plaintiff was at his residence, Mr. Miller stated aloud, "You're gonna try to stay out of trouble but it will find you." Plaintiff took this to mean that his problems were not over.

**H. September 2026 Newton Police Events**

50. On September 4, 2026, Plaintiff opened the door to 270 Grove Street for an officer of the Newton Police Department to permit entry into the hallway of the building.

51. Plaintiff greeted the officer and learned that he was responding to a noise complaint and began walking upstairs. When Plaintiff asked which unit the officer was seeking, the officer responded, "two." Plaintiff pointed toward the stairs leading down to Apartment 2, and the officer proceeded downstairs.

52. Plaintiff later contacted the Newton Police Department seeking records concerning the September 4, 2026 response and was informed that no incident report corresponding to that event was on file.

53. On September 5, 2026, Plaintiff went to the Newton Police Department regarding the June 19 interaction between Barton Miller and Lilla Klesh which was documented in Incident Report No. 26033549.

54. Officer David Calderon viewed the video. According to the report, the officer did not interpret the recording as showing aggression or distress. Police contacted both residents, whose accounts were described as consistent with a friendly exchange, and classified the matter as non-criminal with no offender identified despite clearly. Plaintiff observed Mr. Miller wobbling with a bottle in hand and saw him take steps towards her which made her back away. Plaintiff also observed Mr. Miller make trigger-like gun gesture with his hands which he had pointed towards Ms. Klesh's head.

55. Plaintiff observed that the Newton Police Report had used a nickname for Mr. Miller and listed a different address than the location, 240 Grove Street rather than 270 Grove Street. Plaintiff does not allege that the September 5 report substantiated sexual harassment; he relies on it principally as documentation that he brought concerns about events at the property to law enforcement and presented video evidence.

**I. Eviction Proceedings**

56. Woodland Park later commenced a Massachusetts Summary Process action against Plaintiff for nonpayment of rent.

57. The Summary Process Summons and Complaint was served on or about September 28, 2026, identified an October 5, 2026 entry date, and claimed $15,654.42 in unpaid rent/use and occupancy. Plaintiff was not hand served with the document but rather had found it lodged between his door and the doorframe.

58. The accounting annexed to the complaint lists a March 2026 balance of $2,204.42 and April through September 2026 rent totaling $13,350.00, which together equal $15,554.42.

59. Plaintiff therefore disputes the unexplained $100 difference between the amount demanded and the amounts itemized in the annexed accounting.

60. The eviction followed the complaints and transfer requests described above. Plaintiff recognizes that the action is expressly based on nonpayment of rent and that timing alone does not establish retaliatory motive.

61. Plaintiff alleges, however, that the sequence of communications, Defendants' knowledge and responses, the handling of his transfer requests, the rent accounting, and the circumstances surrounding the eviction are relevant to motive and liability.

## V. COUNT I

### Retaliation - Massachusetts General Laws c. 186, § 18

62. Plaintiff incorporates paragraphs 1 through 61.

63. Plaintiff made written complaints to Defendants concerning suspected violations and conditions affecting his residential premises and reported alleged fire-safety violations to a governmental authority.

64. Massachusetts General Laws c. 186, § 18 prohibits reprisals against residential tenants for specified protected activities, including qualifying reports to governmental authorities and qualifying written complaints to a landlord or its agent.

65. Plaintiff alleges that Defendants subsequently took adverse actions in connection with his tenancy and that, to the extent those actions were taken because of protected complaints rather than legitimate independent reasons, they constituted unlawful retaliation.

66. Plaintiff acknowledges that the statutory six-month presumption does not apply in the same manner to a notice based on nonpayment of rent and therefore does not rely solely on that presumption.

67. Plaintiff alleges damages resulting from any retaliatory conduct established by the evidence.

## VI. COUNT II

### Interference With Quiet Enjoyment - M.G.L. c. 186, § 14

68. Plaintiff incorporates paragraphs 1 through 67.

69. Plaintiff possessed contractual and statutory rights relating to the quiet enjoyment of his residential premises and repeatedly informed Defendants of circumstances he alleged materially affected his use and enjoyment of the property.

70. Plaintiff alleges that Defendants' own acts or omissions, to the extent they constitute direct or indirect interference within the meaning of Massachusetts law, substantially interfered with his tenancy.

71. Plaintiff seeks the remedies authorized by Massachusetts law to the extent the statutory elements are established.

## VII. COUNT III

### Breach of Contract

72. Plaintiff incorporates paragraphs 1 through 71.

73. A valid written residential lease existed between Plaintiff and Woodland Park and included obligations concerning lawful maintenance of the premises and quiet enjoyment.

74. Plaintiff performed his contractual obligations except to the extent performance was excused, subject to defenses, or affected by the circumstances and alleged breaches described herein.

75. Plaintiff alleges that Woodland Park breached applicable lease provisions through acts or omissions to be established by the evidence.

76. Plaintiff suffered damages as a direct and foreseeable result of any such breach.

## VIII. COUNT IV

### Breach of the Implied Covenant of Good Faith and Fair Dealing

77. Plaintiff incorporates paragraphs 1 through 76.

78. Massachusetts law implies a covenant of good faith and fair dealing in the parties' contractual relationship.

79. Plaintiff alleges that Defendants exercised contractual authority and handled his requests, complaints, tenancy, and enforcement proceedings in a manner that deprived him of contractual benefits to which he was entitled.

80. Plaintiff suffered damages as a result.

## IX. FEDERAL CLAIM - SUBJECT TO FACTUAL AND JURISDICTIONAL VERIFICATION

81. The Fair Housing Act prohibits qualifying disability discrimination in housing, including refusal to make a reasonable accommodation when necessary to afford a person with a qualifying disability an equal opportunity to use and enjoy a dwelling, and separately prohibits coercion, intimidation, threats, or interference with rights protected by the Act.

82. The present record establishes that Plaintiff requested a transfer and has medical documentation predating the eviction proceedings, but this draft does not assume that Defendants were informed that the transfer was requested as a disability-related reasonable accommodation.

83. This draft also does not assume that conduct by another resident was directed at Plaintiff because of a federally protected characteristic.

84. Plaintiff should assert a Fair Housing Act count in a filed complaint only if additional facts or evidence establish the required connection between a federally protected right and the challenged conduct.

## X. DAMAGES

85. As a result of the conduct alleged herein, Plaintiff alleges economic and noneconomic injuries, including housing-related losses, emotional distress, psychological injury, disruption of

his residential tenancy, litigation-related consequences, and other damages to be established by admissible evidence.

86. Plaintiff relies on medical evidence only for conclusions supported by the relevant records and qualified witnesses and does not allege medical causation beyond what admissible evidence can establish.

## XI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enter judgment in Plaintiff's favor on each claim established by the evidence;

B. Award Plaintiff actual, compensatory, consequential, and statutory damages as permitted by law;

C. Award any statutory multiple or minimum damages authorized under Massachusetts law;

D. Award Plaintiff costs and, where authorized, reasonable attorney's fees;

E. Grant appropriate declaratory relief concerning the parties' rights and obligations;

F. Grant appropriate injunctive relief to the extent permitted by federal law and consistent with jurisdictional limitations governing interference with pending state-court proceedings;

G. Award pre-judgment and post-judgment interest as permitted by law; and

H. Award such other and further relief as the Court considers just and proper.

## XII. JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Dated: October 4, 2026

Respectfully submitted,

**CAMERON LACROIX**
Plaintiff, Pro Se
P.O. Box 620144
Newton, MA 02462
617-539-6662
cameronlacroix@proton.me

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on October 4, 2026. A copy of the suit will be served upon Woodland Park Partners, LLC's Resident Agent at the address on file with the Commonwealth of Massachusetts.

HAVE D. BROWN

39 BRIGHTON AVE

BOSTON, MA 02134

Dated: October 4, 2026

Respectfully submitted,
/s/ Cameron Lacroix
CAMERON LACROIX
Plaintiff, Pro Se
P.O. Box 620144
Newton, MA 02462
cameronlacroix@proton.me